## HAYNE v. IRVINE.

Property was bequeathed to E. and M., but if they or either of them died without lawful issue, the property was given to the lawful heirs of H. and I. to be equally divided between the children of said H. and I., to them and their heirs forever. I. died, then P., a son of I., leaving children, and afterwards E. and M. died without issue. *Held*, that "lawful heirs" was used in the sense of *children*, and that the children of P., not being children of I., took no part of the estate after the death of E. and M.

Before WITHERSPOON, J., Greenville, March, 1886.

This was a controversy without action between Paul T. Hayne, as trustee of Mary McMahan, and the children and grandchildren of Mrs. Frances Irvine, deceased, submitted January 6, 1886. The case involved the construction of the following codicil to Daniel McMahan's will: "It is my will and desire, and I so direct, that in case my daughters Mary and Elizabeth, or either of them, should die without issue lawfully begotten and living at their or either of their deaths, then and in that case all the property, both real and personal, and moneys and choses in action which they may then have left from the provisions by me made for them in my said will, shall be given to the lawful heirs of my daughters, Mrs. Nancy Hill, the wife of Wm. R. Hill, and Mrs.

Frances Irvine, the wife of Dr. O. B. Irvine, to be divided equally between the children of my said daughters, Mrs. Hill and Mrs. Irvine, to have and to hold to them and their heirs forever share and share alike."

The Circuit decree was as follows:

The question submitted for the determination of the court is, whether the children of Pinckney take under the codicil the share that their father would take if living, or, do the children of Frances Irvine, deceased, living at the death of Mary McMahan, take to the exclusion of Pinckney's children?

It will be observed that the provision made by testator in his will for his daughters, Mary and Elizabeth, was not limited to the lives of the daughters with remainder over, but the entire estate provided for them under the will was given to them by testator. The codicil only provides, in the event of the death of Mary and Elizabeth without issue. what disposition shall then be made of the property "which they may then have left from the provisions by me made for them in said will." It seems to me that under the codicil no rights or interests could atttach to the children of Mrs. Hill and Mrs. Irvine until the death of Mary and Elizabeth without issue. In this view I do not think that Pinckney, at the time of his death, had acquired under the codicil such an interest as would descend to his children. But for the use by the testator of the term "heirs" in the codicil, the case of *Wessenger* v. *Hunt*, 9 *Rich. Eq.*, 464, would be conclusive upon the point submitted to the court.

In this case Chancellor Wardlaw upon Circuit says: * * *

Under the codicil the time fixed for distribution is at the death of Mary and Elizabeth without issue, which was a time future to the death of the testator. The testator could not have intended to use the word "heirs" in the codicil in its technical sense, as the children of Mrs. Irvine could take under the codicil, upon the death of Mary and Elizabeth without issue, whether their mother was then living or dead. I am satisfied that the testator used the word "heirs" as synonymous with the word "children" in the codicil, as the description of a class of persons, whom he intended to take, upon the death of his daughters, Mary and Elizabeth, without issue. In my judgment there is nothing in the

codicil in conflict with this view, construing the word "heirs" to mean "children."

I construe, under the authority of *Wessenger* v. *Hunt, supra,* that the children of Mrs. Irvine, who were living at the death of Mary McMahan, take under the codicil, to the exclusion of the children of Pinckney, and it is so ordered and adjudged.

From this decree the children of Pinckney appealed upon the following grounds: I. Because Pinckney Irvine, having been living at the date of the codicil to the will of Daniel McMahan, and also at the time of his death, took such an interest under said codicil as entitled his children, the said defendants, to inherit the same through him at the death of Mary McMahan. II. Because the judge erred in holding that the testator used the word "heirs" in said codicil in the sense of "children," and thus construing the gift to the *heirs* of Nancy and Frances as a gift to their "children" living at the death of Mary. III. Because the testator expressly gave the property in question to the *heirs* of Nancy and Frances, and his reference to the *children* was simply to show the manner in which, or the quantity of estate which, said *heirs* should take respectively, and therefore his honor should have held that the children of Pinckney, as *heirs* of Frances, took among them the share which Pinckney would take if living.

*Messrs. Bellinger & Clyde,* for appellants.

*Messrs. Stokes & Irvine,* contra.

July 19, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This case was heard below upon an agreed statement of facts, from which it appeared that one Daniel McMahan, by will dated in 1845, bequeathed certain property to his two daughters, Mary and Elizabeth. Thereafter, in 1846, by codicil to this will he directed "that in case Mary and Elizabeth, or either of them, should die without lawful issue, at their death, or at the death of either of them, then in that case the said property * * * which they may have left, shall be given to the *lawful heirs*" of two of his other daughters, Mrs. Nancy Hill and Mrs. Francis Irvine, to be equally divided

"between the children" of his said two daughters, "to them and their heirs forever share and share alike." Mrs. Francis Irvine died before either Mary or Elizabeth; a son of her's, Pinckney, also died before Mary or Elizabeth, but after his mother; then both Mary and Elizabeth died without issue. Upon these facts, the question submitted to the court below was, whether the children of Pinckney (defendants) could take the share that their father would have taken, had he survived Mary and Elizabeth, or do the children of Mrs. Francis Irvine living at the death of Mary take to the exclusion of Pinckney's children? The Circuit Judge held, that the children of Mrs. Irvine living at the death of Mary took to the exclusion of the children of Pinckney. The appeal renews this question before us.

The difficulty arises upon the use of the terms, "*heirs*" and "*children*" in the codicil. Had either of these terms alone been used, there could not have been much doubt as to the construction. For instance, take the term "heirs," as employed by the testator without the subsequent use of the term "children"; then Mrs. Irvine having died before Pinckney, he, Pinckney, would probably have been one of her heirs and, therefore, entitled to a share in the property, which upon his death would have descended to his children, the defendants. Or take the term "children" alone; then under the case cited by the Circuit Judge, *Wessenger* v. *Hunt* (9 *Rich. Eq.*, 464), where it was held that a bequest to be distributed at a future time to the death of the testator, to wit, at the death of an intermediate life tenant, all who answer the description at the time of the distribution are the parties alone entitled. The children of Pinckney not answering the description of the term children of Mrs. Irvine, at the death of Mary could not take, but her children, then in existence, would take to the exclusion of Pinckney's children, as held by the Circuit Judge.

Both of these terms, however, are used in the codicil, producing a conflict, unless they can be harmonized. The Circuit Judge construed the word *heirs* as synonymous with *children*. We are inclined to think this is the correct construction, and in accordance with the intention of the testator; otherwise the division of the property could not have taken place until the death of Mrs.

Irvine, as no one can have heirs before death. It is true, Mrs. Irvine is dead now, and the difficulty suggested does not arise here; but suppose that she was still alive. If the word "heirs" is to have its technical effect, none of the parties could claim, although Mary and Elizabeth have both died without issue living. The time, however, for the distribution has arrived, and in the event that no one could take but heirs, if Mrs. Irvine was still alive, there could be no distribution.

We must conclude, that the testator intended that the division should be made at the death of Mary and Elizabeth, one or both, and as the children of Mrs. Irvine and Mrs. Hill could take at that time whether their mothers were dead or alive, when "heirs" could not, the intention of the testator could not be carried out except by the construction of the Circuit Judge, to wit: that the term "heirs" was not used in its technical sense, but was used synonymously with the term "children." Having reached this conclusion, we are of opinion that the case of *Wessenger* v. *Hunt* is conclusive of the question involved.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.